UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

      Defendants.

                                /

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER REGARDING POTENTIAL CONFLICTS OF INTEREST
ARISING OUT OF ATTORNEY ELLIOTT HALL'S CONTINUED REPRESENTATION
OF DEFENDANT STEWART**

At evidentiary hearings held on September 23, 2014 and September 26, 2014, this Court considered two potential conflicts of interest arising out of Attorney Elliott Hall's continued representation of Defendant Stewart, both concerning Attorney Hall's ability to cross-examine government witnesses. On September 22, 2014, the government submitted a letter to the Court alerting it to these potential conflicts of interest. Based on testimony from Robert Shumake, his current counsel Robert Morgan, Defendant Stewart and Attorney Hall, this Court concludes that (1) Robert Shumake's written and oral waiver of his attorney/client privilege is knowing, intelligent, and voluntary, (2) Defendant Stewart's written and oral waiver of his right to conflict-free representation is knowing, intelligent, and voluntary, and (3) the potential conflicts of interest arising out of Attorney Hall's continued representation of Defendant Stewart that were addressed at the September 23, 2014 and September 26, 2014 hearings are of a type that can be waived. Balancing Defendant

Stewart's right to counsel of his choice with the Court's interest in the integrity of the Court's proceedings, this Court concludes that Attorney Hall may proceed as Defendant Stewart's counsel in this criminal matter.

## I.   Background

In the government's September 22, 2014 letter, two potential conflicts of interest were identified.   Both concern Elliott Hall, Defendant Stewart's counsel.   The first involves Attorney Hall's prior representation of government witness Robert Shumake.  The second involves Attorney Hall's financial interest in a company, Detroit Gateway Park Outlet Mall, LLC, that received a loan from the City of Detroit General Retirement System ("GRS").   As described below, both potential conflicts of interest raise concerns about Attorney Hall's ability to cross-examine government witnesses.

### A.  First Conflict of Interest - Prior Representation of Shumake

As to the first potential conflict of interest, the government informed the Court that Robert Shumake is expected to testify at Defendant Stewart's upcoming criminal trial.  He will testify that he gave Stewart items of value in the hope of influencing Stewart in his role as a trustee of the City of Detroit Police and Fire Retirement System ("PFRS").   The government further advised the Court that Attorney Hall had previously represented Shumake and Shumake's company in a civil lawsuit brought against them by the PFRS that raised some of the same matters about which Shumake will testify in this criminal trial.  *See Police & Fire Retirement System, et al. v. Shumake, ICG Real Estate, et al.,* No. 10-010491-CK (Wayne County Circuit Court).  Attorney Hall will have to cross-examine Mr. Shumake, and that cross-examination is likely to deal with issues that were part of that civil case.  The concern here is that Mr. Hall's prior representation of Shumake may create a

disincentive for him to pursue certain lines of cross-examination that would be helpful to his current client Defendant Stewart.

**B.  Second Conflict of Interest - Attorney Hall's Financial Interests**

As to the second potential conflict of interest, the government informed the Court that Attorney Hall has a financial interest in Detroit Gateway Park Outlet Mall, LLC, which obtained a loan from the GRS for a commercial development near Eight Mile Road and Woodward Avenue in Detroit (the "Gateway Project").  The government intends to call current and former trustees of both Retirement Systems, as well as staff for both Retirement Systems, and legal counsel for the PFRS as witnesses at trial.  The government also intends to call Louis Vogt, who has an ongoing relationship with the Retirement Systems and who plays a significant role in the GRS's Gateway Project investment. Among other things, the government will question Vogt at trial about items of value he allegedly provided Stewart in an attempt to influence Stewart as trustee of the PFRS.

Louis Vogt is the owner of Banyan Realty Advisors, which is located in Florida and serves as one of the real estate investment advisors and investment mangers for the GRS and PFRS.  Among other things, he performs due diligence investigations for prospective investments and manages investments.  He also brings alternative investments to the Retirement Systems for their consideration.  The trustees have discretion whether to invest in these proposals.  They also have the discretion to decide whether Vogt will be chosen to perform due diligence on a proposed investment or will be chosen as the investment manager for a particular investment.

Vogt performed the due diligence investigation for the ICG Leaseback deal, which will be a subject in Defendant Stewart's upcoming trial.  Both Retirement Systems invested in

the ICG Leaseback deal, which was brought to them by Robert Shumake.  In addition, Vogt was involved in GRS's investment in Gateway Project, which is <u>not</u> a subject of the current criminal trial.  That investment was brought to the GRS by Detroit Park Outlet Mall, LLC as early as August 11, 2004.  Minutes from an August 14, 2004 GRS meeting provide that:

> RE:  Detroit Gateway Park Outlet Mall, LLC - Investment Proposal
> Representatives Marvin Beatty, <u>Elliott Hall</u>, Bernard Shrock and Richardo
> Solomon of the aforementioned company entered the meeting to discuss
> potential investment in the Detroit Gateway Park Lifestyle Mall.[1]

(8/14/04 GRS meeting minutes) (Emphasis added).  Other than that one appearance on August 14, 2004, the government informs the Court that it does not appear that Elliott Hall made any further appearances before the GRS on this investment.

On September 21, 2014, Attorney Hall informed the government that he has a 9% interest in the Gateway Project.  The government informs the Court that the GRS's minutes regarding the Gateway Project are extensive and show that Vogt's active participation in this investment has spanned several years.  As pointed out by the government in its brief, the potential exists that Vogt's involvement in the Gateway Project and the GRS's reliance on his recommendations regarding that investment may create a disincentive for Attorney Hall to pursue certain lines of cross-examination out of a concern that Vogt may not be helpful on the Gateway Project in the future.  There is also a concern that Attorney Hall's financial interest in the Gateway Project may create a disincentive for Attorney Hall to fully cross-examine GRS staff or trustees called as government witnesses who may have been involved in the Gateway Project.

---

[1]The government informs the Court that this project was subsequently referred to as "Shops at Gateway Park," "The Shops at Detroit's Gateway Park Convertible Mortgage Loan and Retail Project," and "Gateway Park Outlet Mall."  Hereinafter it will be referred to as "the Gateway Project."

## C.  September 23 and 26, 2014 Evidentiary Hearings

On September 23, 2014, in response to the government's letter, the Court held a hearing on the potential conflict issues identified in the government's letter.  Counsel for all parties were present as well as Defendant Stewart, Mr. Shumake, and Mr. Shumake's counsel Robert Morgan.

Mr. Hall asked the Court to allow Defendant Stewart until September 26, 2014 to carefully weigh whether he wanted to waive his right to conflict-free counsel and proceed with Mr. Hall's representation in this criminal matter.  The Court agreed to continue the hearing on Mr. Hall's conflicts over to September 26th and asked both Mr. Hall and the government to file briefs fully addressing (1) the conflicts raised in the government's letter and at the September 23rd hearing, and (2) whether those conflicts could be waived if Defendant Stewart did, indeed, decide to voluntarily and knowingly waive his right to conflict-free counsel.

The requested briefs were filed and considered by the Court.  An evidentiary hearing was held on September 26, 2014. Counsel for all parties were present as well as Defendant Stewart.  At that hearing, Defendant Stewart informed the Court, both in writing [ECF No. 321] and orally, that he will waive his right to conflict-free representation and wants Attorney Hall to represent him in the upcoming trial.  In their briefs and at the hearing, the government and Attorney Hall both argued that the Court, after an adequate inquiry and determination that Stewart had made a knowing, intelligent, and voluntary waiver of his right to conflict free counsel, should allow Attorney Hall to continue his representation of Defendant Stewart in this criminal matter.  The Court then thoroughly examined Attorney Hall and Stewart about the potential conflicts of interest arising out of Attorney Hall's

continued representation.

## II.  Analysis

This Court is called upon to determine whether (1) Robert Shumake's written and oral waiver of his attorney/client privilege is knowing, intelligent, and voluntary, (2) Defendant Stewart's written and oral waiver of his right to conflict-free representation is knowing, intelligent, and voluntary, and (3) the potential conflicts of interest arising out of Attorney Hall's continued representation of Defendant Stewart that were addressed at the September 23, 2014 and September 26, 2014 hearings are of a type that can be waived. Before considering Defendant Stewart's waiver of the right to conflict-free representation, the Court first addresses whether witness Shumake's waiver of his attorney/client privilege is knowing, intelligent, and voluntary.

### A.  Shumake's Waiver is Knowing, Intelligent and Voluntary

At the September 23, 2014 hearing, the Court questioned Attorney Hall about his prior representation of Mr. Shumake. It then heard from Mr. Shumake's current counsel, Robert Morgan, about Hall's representation and was informed that Mr. Shumake had executed a written waiver [ECF No. 311] of his attorney/client privilege. After reviewing his written waiver, the Court thoroughly examined Mr. Shumake under oath about the extent of Mr. Hall's prior representation so as to determine whether his waiver was knowing, intelligent, and voluntary. The Court learned that Attorney Hall's representation of Mr. Shumake was brief and limited and that he has been and is being represented by several other attorneys in that civil case. Based on testimony at the September 23rd hearing and Mr. Shumake's written waiver, this Court concludes that Mr. Shumake's waiver of his attorney/client privilege is knowing, intelligent, and voluntary.

The Court now considers whether Defendant Stewart's written and oral waiver of his right to conflict-free representation was knowing, intelligent, and voluntary and whether the potential conflicts of interest created by Attorney Hall's continued representation are of a type that can be waived.

### B. Stewart's Waiver of His Right to Conflict-Free Counsel is Knowing, Intelligent and Voluntary and The Potential Conflicts at Issue Here Are of a Type that Can Be Waived

#### 1. Standard of Review

The Court's decision whether to disqualify Stewart's counsel of choice will be given "wide latitude," will be reviewed on appeal "generous[ly]," and "will be upheld unless arbitrary or without adequate reasons."  *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (internal quotation marks and citations omitted).

#### 2. Court's Task

In a very recent decision, the Sixth Circuit clarified the Court's task:

> In general, in deciding whether to accept a defendant's waiver of conflict-free counsel, a district court must determine (i) whether the defendant's waiver is sufficient and (ii) whether the conflict is of a type that can be waived.  The first inquiry focuses on the specific defendant before the district court.  The second inquiry focuses on the integrity of the judicial system generally.

*United States v. Cardin*, ___ F. App'x ___, 2014 WL 4160052, at *5 (6th Cir. Aug. 22, 2014) (internal citations omitted).

#### 3. Stewart's Waiver Is Sufficient

Based on his testimony at the September 26, 2014 hearing and his written waiver, this Court concludes that Stewart's waiver of his right to conflict-free representation is knowing, intelligent, and voluntary.  The Court first notes that Defendant Stewart was provided with additional time to contemplate the potential risks of Attorney Hall's continued representation

and was advised that he had the right to discuss his decision whether to waive with an attorney other than Mr. Hall. The Court also advised Defendant Stewart about the potential conflicts of interest arising from Attorney Hall's continued representation.

As to the potential conflicts arising out of Attorney Hall's prior representation of government witness Robert Shumake, Defendant Stewart acknowledged that he understood that Shumake would offer testimony that directly incriminates him. He also understood that Mr. Hall, along with other attorneys, had previously represented Mr. Shumake and his company in a lawsuit that was brought against them by the PFRS. He understood that this civil lawsuit dealt with the same subject matter about which Shumake would testify to at Defendant Stewart's upcoming criminal trial. Defendant Stewart acknowledged that he understood that his interests in this criminal matter could be adversely affected by Mr. Hall's prior representation of Mr. Shumake in several ways, including Mr. Hall's access, directly and indirectly, to privileged information because of the attorney/client relationship; that this information could have come from Mr. Shumake himself or from one of his business colleagues or from one of his other attorneys; and that, because of attorney/client privilege, Mr. Hall's ability to cross-examine Mr. Shumake could be impaired. Defendant Stewart also acknowledged that, during the trial, the jury may become aware of Mr. Hall's prior representation of Mr. Shumake in that civil suit. Both in his written waiver and in testimony under oath at the September 26, 2014 hearing, Defendant Stewart acknowledged that he had thoroughly discussed this potential conflict of interest with Mr. Hall, understood that he had the right to speak confidentially with another attorney about whether he should waive his right to conflict-free representation, and informed the Court unequivocally that he wanted to waive his right to conflict-free

representation.

As to the potential conflicts arising out of Attorney Hall's financial interest in the Gateway Project, in which the GRS has an investment, Defendant Stewart acknowledged that he understood that Mr. Hall had a financial interest in the Gateway Project; that the government's witnesses will include Mr. Vogt as well as GRS staff and trustees who have been involved in the Gateway Project; and that the potential existed that Mr. Hall's financial interest in the Gateway Project may affect his ability to fully cross-examine these witnesses out of concern that doing so will alienate them. Both in his written waiver and in testimony under oath at the September 26, 2014 hearing, Defendant Stewart acknowledged that he understood that he is entitled to conflict-free counsel and is aware of the potential conflicts of interest arising out of Mr. Hall's financial interest in the Gateway Project. After confirming his understanding of these facts and the potential conflict of interest arising out of Mr. Hall's financial interest in the Gateway Project, Defendant Stewart unambiguously stated his intent to waive his right to conflict-free counsel.

During the Court's questioning of Defendant Stewart, a former trustee of the PFRS and 25-year veteran of the Detroit Police Department, it appeared that he fully appreciated the risks involved with Attorney Hall's continued representation and made a properly informed choice to waive his right to conflict-free counsel. This Court thus concludes that Defendant Stewart's waiver of the right to conflict-free representation was knowing, intelligent, and voluntary. *See United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007) (rejecting the defendant's argument on appeal that his waiver was not knowing and voluntary where the district court devoted considerable time to conflict issues, advised the defendants of the potential hazards of joint representation, and questioned each defendant

individually before accepting the defendant's waiver of his right to conflict-free representation).   *See also United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986) (observing that "[t]o secure a valid waiver, the court must:  (1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired.").

### 4.  The Potential Conflicts Are of a Type That Can Be Waived

As the Sixth Circuit observed in *Swafford*, "[t]he Sixth Amendment guarantees counsel for all defendants in criminal prosecutions and recognizes a qualified right to choose that counsel."  512 F.3d at 839 (citing *Wheat v. United States*, 486 U.S. 153, 158-59 (1988)). Although a "defendant enjoys a presumption in favor of counsel of choice," that "presumption may be overcome because a choice must be balanced with the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice."  *Id.* (internal quotation marks and citations omitted).

"In situations where a potential conflict of interest may arise, the court's interest in the integrity of the proceedings may trump the defendant's choice.  Whether the client waives his right to conflict-free representation is not dispositive, as district courts have the ability to prevent a conflict 'not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'"  *Id.* (quoting *Wheat*, 486 U.S. at 163).  The Court has an "obligation to balance the defendant's right to counsel of choice with the court's independent obligation to serve justice.'"  *Id.* at 840.

In *Swafford*, the Sixth Circuit found the following language from *Wheat* to be

instructive:

> "Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them."

*Id.* (quoting *Wheat*, 486 U.S. at 162-63).

The *Swafford* court also wisely observed the need for the Court's discretion in light of

the "whipsaw" nature of a criminal client's waiver of the right to conflict-free representation:

> Such discretion is warranted, moreover, because of the "whipsaw" nature of waiver of conflict-free representation: "If a trial court disqualifies counsel, defendant will argue . . . a violation of his Sixth Amendment right to counsel of his choice. If a trial court refuses to disqualify an attorney, a defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest, asserting that his waiver was not knowingly and voluntarily made."

*Id.* (quoting *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1353-54 (6th Cir. 1993)).

"[B]alanc[ing] the defendant's right to counsel of choice with the court's independent

obligation to serve justice," *id.* at 840, this Court concludes that the potential conflicts of

interest arising from Attorney Hall's prior representation of Mr. Shumake and Mr. Hall's

financial interest in the Gateway Project are the type that can be waived. First, as to Mr.

Hall's prior representation of Mr. Shumake, this Court finds that Shumake's unambiguous

waiver of the attorney/client privilege as well as the fact that Mr. Hall's representation was

short in duration and limited in nature, greatly diminish the risk that Mr. Hall's cross-examination will be compromised.  *See United States v. Lussier*, 71 F.3d 456, 462 (2d Cir. 1995) (observing that a witness's waiver of the attorney/client privilege "significantly diminished" defense counsel's "potential inability to cross-examine" that witness at trial). Second, as to Mr. Hall's minimal (9%) financial interest in the Gateway Project, this Court finds that, because the allegations in this criminal matter do not relate to the Gateway Project and because Defendant Stewart unequivocally expressed his desire for Mr. Hall's continued representation at trial despite being fully advised that government witnesses will nonetheless include persons that have been involved in the Gateway Project, any risk to the integrity of the judicial system is diminished.  Moreover, the potential conflicts at issue here do not arise out of circumstances that warrant disqualification of a defendant's counsel of choice, e.g., joint or multiple representation or invocation of an advice-of-counsel defense.  Rather, the conflicts presented here are potential and are not so severe that they cannot be waived.  Thus, on balance, this Court will give preference to Defendant Stewart's right to counsel of his choice.

## III.   Conclusion

For the above-stated reasons, this Court concludes that Mr. Hall may proceed as Defendant Stewart's counsel in this criminal matter.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager